## MICHAEL POWER v. AMOS R. HARLOW.

*Guardianship— Ward's rights—Special questions—Charge to the jury.*

1. A natural guardian has no power to admit away the rights of the ward whose person is in his custody. So, a mother cannot release her child's right of action for an injury, by the admission that it had been warned to avoid the danger.

2. A right of action is property as much as if it were a corporeal possession; and when it belongs to a minor is protected by law in the same way and with the same securities.

3. A natural guardian has the custody of the ward's person only, and cannot be given control of its estate except by judicial proceedings, and after giving security for responsible care.

4. One is not entitled as of right to have special questions put if the answers would not be conclusive.

5. Refusal of requests for instructions is not error if the charge covers all that the party requesting them was entitled to ask.

6. In charging a jury it is not error to read to them the language used by the Supreme Court in disposing of the same case on a former trial, if the language read merely lays down a rule of law as applicable to the one case as to the other.

7. Damages for a personal injury resulting in the mutilation of a limb may properly take account of the consequent limitations upon the victim's choice of an occupation, and on his ability to work, and also of the permanent annoyance likely to be caused by the deformity.

Error to Marquette.  (Grant, J.)  April 29–30.—June 3.

CASE.  Defendant brings error.  Affirmed.

*F. O. Clark* for appellant.  The negligence of a parent is to be imputed to a child injured in consequence: Shearm. & Redf. Neg. (3d ed.) § 48; *Hartfield v. Roper* 21 Wend. 615; *Mangam v. Brooklyn R. Co.* 36 Barb. 230; *Flynn v. Hatton* 43 How. Pr. 333; *Kreig v. Wells* 1 E. D. Smith 74; *Holly v. Bost. Gas Light Co.* 8 Gray 123; *Callahan v. Bean* 9 Allen 401; *Wright v. Malden &c. R. Co.* 4 Allen 283; *Chicago v. Starr* 42 Ill. 174; *Waite v. Northeastern R. Co.* El. B. & E. 719; *East Sag. Ry. Co. v. Bohn* 27 Mich. 503;

*Smith v. Hestonville M. & F. P. R. Co.* 2 Am. & Eng. R. Cas. 12; *Singleton v. E. C. R. R. Co.* 7 C. B. (N. S.) 287; *Mangan v. Atterton* L. R. 1 Exch. 239; *Leslie v. Lewistown* 62 Me. 468; *Lehman v. Brooklyn* 29 Barb. 234; *Flynn v. Hatton* 4 Daly 552; *Pitts. F. W. & C. R. R. Co. v. Vining* 27 Ind. 513; *L. & I. R. R. Co. v. Huffman* 28 Ind. 287; *Ewen v. R. R. Co.* 38 Wis. 613; *Munger v. Tonawanda R. R. Co.* 4 N. Y. 349; *Bulger v. Albany R. R. Co.* 42 N. Y. 459; *Louisville P. C. Co. v. Murphy* 9 Bush 522; *Bannon v. Balt. & O. R. R.* 24 Md. 108; *Ohio & Miss. R. R. Co. v. Stratton* 78 Ill. 88; for cases of contributory negligence: *L. S. & M. S. R. Co. v. Miller* 25 Mich. 282; *Mich. Cent. R. Co. v. Coleman* 28 Mich. 447; *Det. & M. R. Co. v. Van Steinburg* 17 Mich. 99; *Underwood v. Waldron* 33 Mich. 232; *Mich. Cent. R. Co. v. Campau* 35 Mich. 469; *Marq., Hought. & Ont. R. Co. v. Handford* 39 Mich. 537; *Le Baron v. Joslin* 41 Mich. 315; *Teipel v. Hilsendegen* 44 Mich. 462; *Lake Shore & Mich. Southern v. Bangs* 47 id. 474; *Foley v. Chicago & N. W. R. R. Co.* 48 Mich. 627; *Greenwald v. M., H. & O. R. R. Co.* 49 Mich. 199, 200; *Wood v. Detroit City R. R. Co.* 52 Mich. 402; *Wendell v. N. Y. C. & H. R. R. Co.* 91 N. Y. 425; *Thurber v. Harlem B. M. & F. R. R. Co.* 60 N. Y. 333; *Reynolds v. N. Y. C. & H. R. R. Co.* 58 N. Y. 248; *Cordell v. N. Y. C. & H. R. R. Co.* 75 N. Y. 332; *Hughes v. Macfie* 2 H. & C. 744; *Mangan v. Atterton* L. R. 1 Exch. 239 : 4 H. & C. 388; *McMahon v. New York* 33 N. Y. 642; *Oakland R. Co. v. Fielding* 48 Penn. St. 320; money damages are not recoverable for the humiliation that is incident to a physical injury : *Illinois Central v. Sutton* 53 Ill. 397; 2 Thomp. Neg. 1255; *Joch v. Dankwardt* 85 Ill. 331; 2 Greenl. Ev. § 267; *Canning v. Williamstown* 1 Cush. 451; *Flemington v. Smithers* 2 C. & P. 292.

*W. P. Healy* for appellee. The doctrine of imputed negligence is barbarous and is being repudiated: *Robinson v. Cone* 22 Vt. 213; *Rauch v. Lloyd* 31 Penn. St. 370; *Smith v. O'Connor* 48 Penn. St. 222; *Railroad Company v. Snyder* 18 Ohio St. 410, 411; *Kay v. R. R. Co.* 65 Penn. St. 276; *Birge v. Gardiner* 19 Conn. 507; *Railroad Company v. Mahoney* 57 Penn. St. 187; the admissions of a guardian will not bind an infant, but proof must be made: *Thayer v. Lane* Walk. Ch. 200; *Chandler v. McKinney* 6 Mich. 217; the admission of the infant himself would not

cut off his property rights in this action : *Smith v. Smith* 13 Mich. 259.

COOLEY, C. J.   This case has once before been in this Court, and the opinion filed in deciding it is reported in 53 Mich. 507.   It was sent back for a new trial, and has been tried with the result that the plaintiff has recovered a considerable judgment.

The action was brought to recover damages for an injury which is alleged to have been caused by the negligence of the defendant's servant.   The material facts, as they were brought out on the former trial, are the following :

Defendant is owner of a farm near the city of Marquette, which is managed for him by one Hodgson.   Parcels are leased from the farm to laboring men for the raising of vegetables, and the lessees cultivate these parcels with the assistance of their wives and children.   The manager has been accustomed to use dynamite on the farm to rid it of stumps.   The dynamite is put up in rough wood boxes, and with it, in a small tin box, are the exploders.   These are shaped like ordinary percussion caps, but much larger, and are partially filled with a fulminate, which is very powerful, and liable to explode if accidentally struck or picked with a pin or knife, or touched with fire.   In the spring of 1883 a box of the dynamite with exploders was deposited by Hodgson under a small temporary shed near where parcels had been leased, and within a few feet of where the tenants would pass in going to and from their parcels for purposes of cultivation.   Plaintiff's father was one of these tenants, and on July 4, 1883, the father was at work on his parcel, and plaintiff, who was then eight years and four months old, went with a brother who was two years older to take the father his dinner.   They worked with the father awhile, and then moved about at pleasure in the vicinity of the shed. The plaintiff looked into the shed, saw the box there, looked into it, saw the exploders, took out one, and, being aware of no danger, struck it with a stone, when it exploded and injured him severely.

This Court held, when the case was here before, that there was evidence to go to the jury of negligence on the part of the defendant, in keeping the exploders thus exposed, and in dangerous proximity to where persons were accustomed to pass and repass, and where small children, who were rightfully in the vicinity, and who were without knowledge of the peril, might take and handle them. It was also held that, as there was no distinct path for the tenants and their families in going back and forth, the plaintiff could not be regarded as a trespasser in going to the shed, which was but a few feet from where a direct line from the highway to his father's parcel would pass ; and that defendant, knowing that his tenants made use of the services of their children, should have anticipated that they would follow their childish instincts, in taking and handling what was left exposed, when they were aware of no harm in doing so.

On the second trial the efforts of the defense were very largely given to showing that the plaintiff knew the danger of handling the explosives, and that he had repeatedly been warned to keep away from and not handle them. Also that the father of the plaintiff was grossly negligent in permitting the boy to be about the shed where he knew the dynamite and explosives were stored. The counsel for the defendant in this Court has presented succinctly, but in a very forcible manner, the evidence given upon this branch of the case, and it must be confessed that the showing is a very strong one ; so strong that, perhaps, if we were to pass upon the facts, we might be constrained to accept it as conclusive. But the jury have given their verdict upon the facts ; and we review, not the conclusions of the jury, but the rulings of the court.

The errors assigned relate, in the main, to the action of the court in submitting the case to the jury. Only one ruling upon evidence is complained of. For the purpose of showing that the plaintiff knew the danger of handling the exploders, and had been warned to let them alone, the defense called Dr. Northrup, who attended upon the plaintiff after the injury, and showed by him that some one, in the presence of the plaintiff,—and his recollection was it was the

plaintiff's mother,—made the statement that the boy had been frequently warned of the presence of the exploders, and told to let them alone. The plaintiff was at the time under the influence of an anæsthetic, and the doctor could not say that he was in a condition to understand what was going on about him. He was lying on a lounge and crying. Upon this evidence the trial judge remarked: "A statement by the mother, not in the presence or hearing of the father, or the boy, the plaintiff in this case, in my judgment, would not be admissible;" and he ordered it struck out.

It is claimed by the defense that the mother, as well as the father, was natural guardian of the boy (*East Saginaw C. R. Co. v. Bohn* 27 Mich. 503), that as such she was chargeable with care for him, and her negligence is imputable to him. The deduction from this is that her admissions are evidence against him to prove his or her fault. No authority is cited to this, and we are aware of none. The natural guardian has no power to admit away the rights of the ward whose person is committed to his custody. He is guardian of the person only, having no control of any estate the ward may possess, and could not be given a control except on judicial proceedings and after giving security for responsible care. This being so, it cannot be plausibly claimed that by an irresponsible admission he may deprive his ward of important rights. A right of action is as much property as is a corporeal possession, and, in the case of a minor, is protected by the law in the same way and under the same securities. The mother could not release it even for full consideration and by the most formal instrument; much less, therefore, could she, by mere word of mouth, when not under oath, or otherwise chargeable with responsibility, destroy his right of action by her admissions. The circuit judge was therefore right in his ruling. As the evidence did not fairly tend to show the plaintiff heard what was said, we have no occasion to consider what the ruling should have been had that fact appeared.

The following requests for instructions, on the part of the defense, were refused:

"There was nothing illegal for the defendant to permit his servants in charge of the work of the farm to use explosives for the purpose of taking out stumps, and he had a perfect right to do so, and to keep the explosives where he saw fit upon his farm, provided he or his servants used reasonable care to see that all who had a right to be upon said farm were informed of the dangerous character of such explosives, if they did not know such facts, and also where the same were stored.

"If you believe from the evidence, that the explosives were kept in the shed in question at the time that the father rented his patch of ground for potatoes in the spring of 1883, and had been used previously for the purpose of taking out stumps, and that the father of the plaintiff knew that they had been so used, before hiring his patch of ground, his contract of hire was with reference to the fact that these explosives were so kept there ; and he would have no right to complain on account of the place where they were kept, or the manner of their keeping, if they were kept after the hiring in the same manner, or as safely as they were at the time of his hiring said ground ; and if you believe that the father brought the plaintiff upon the farm in question, having such knowledge, and that he did not carefully watch and guard him, so as to prevent him from going where the explosives were,—then he was guilty of contributory negligence, which would be imputed to the child, if he was too young to comprehend the danger, and therefore the plaintiff cannot recover."

The following is the charge of the judge as given, omitting formal parts :

"The defendant in this case is, and has been for some years, the owner of a farm near the city of Marquette. He has rented patches of land to poor people living in and about the city; for them to plant potatoes and other vegetables on, from year to year. The plaintiff's father was one of those to whom the defendant so leased a piece of this land. The contract that was made between these parties involved the right of the plaintiff in this case to go with his father upon the land in question,—to go upon this piece of land, to take things for his father, and to work with his father upon the land. The children of the defendant's tenants, under the law in this case, had a right to go to and from this land, as I have said, to assist their parents.

Our Supreme Court, in passing upon this case, has used the following language, which is the law in the case:

'The moving about of the children upon the land where they were at liberty to go, while they were not actually employed, was as much an incident to their being there as the loitering or playing by children outside the traveled path of the highway as they go upon it to school or upon errands. Children, wherever they go, must be expected to act upon childish instincts and impulses, and others who are chargeable with the duty of care and caution towards them must calculate upon this, and take precautions accordingly. If they leave exposed to the observation of children anything which would be tempting to them, and which they, in their immature judgment might naturally suppose they were at liberty to handle or play with, they should expect that liberty to be taken.'"

" The defendant in the case has for some years kept and used upon his farm what is known as dynamite, a powerful explosive, and 'exploders,' one of which has been introduced in evidence before you. He has kept those there, and used them in blasting stumps upon his farm. This he had a perfect right to do. He had a perfect right to keep and use this property upon his farm for the purpose indicated. It seems they were kept in a box similar to the box that has been introduced in evidence before you upon the trial. The defendant constructed a shed, which was made, as the witnesses have indicated to you, by placing a piece of scantling upon the top of a stump, and by placing plank upon the scantling, the other end resting upon the ground. This box, containing these 'exploders' and other material used for the purposes of blasting, was placed under this shed, towards the lower end of the shed, near where the planks touched the ground. The law says it is negligence, gentlemen, to leave such things exposed, without any warning or notice, so that they might be handled or played with by children who had a right to be there; and here let me say that the acts of Mr. Hodgson, who was the foreman, or boss as he is called, upon the farm of the defendant, were in law the acts of the defendant himself, and Mr. Harlow, the defendant, is responsible for all the acts done by Mr. Hodgson in regard to the use of this powder or these 'exploders.' If, therefore, gentlemen, you find from the evidence in the case that this box containing these 'exploders' was placed under the shed in question, and was placed there in such a manner that children, including the plaintiff in the case, who had the right to pass to and fro near

it, might, in following out their boyish or childish instincts, go to it and get at its contents, I charge you that that would be an act of negligence on the part of the defendant for which he would be liable. It was his duty, under such circumstances, to be careful in regard to the use of these dangerous materials, and to give to those who had a right to be upon his property some warning or notice, or to take reasonable means to keep it from the reach of the children who had a right to be there; and if he left the box there, or his agent, Mr. Hodgson, left the box there, at the place indicated, either open, or so insecurely fastened that a child could open it and get at its contents, then I charge you that that would be an act of negligence upon his part.

But it is not enough, gentlemen, that there should be negligence on the part of the defendant in the case. That alone does not fix a liability upon him to compensate a party injured in damages. There must be no contributory negligence on the part of the plaintiff himself. In other words, it is the law that the plaintiff, before he can ask you to give him damages for such an injury, must show to you, by a preponderance of evidence, that he also is free from any blame in the matter; and that is what is meant by contributory negligence in the law. Any person knowing that there is danger, any person doing an act which is negligent on his part, cannot recover for an injury which happens, notwithstanding any amount of negligence there may be on the part of the other party. The law in this State does not apportion these acts of negligence; consequently the plaintiff himself must be free from negligence.

I now read you the defendant's fifth request : 'In order for a person suing in an action of this kind to recover, there must first be negligence, or the want of reasonable care, on the part of the defendant or his authorized agents, and it must also appear that the person who complains has been free from negligence, and that no want of reasonable care on his part has contributed to cause the accident, or that, if reasonable care had been used by him, the accident might have been prevented.'

There are two questions in the matter of contributory negligence in this case : *First*, contributory negligence on the part of the plaintiff himself; and *second*, contributory negligence on the part of the father. The boy was, at the time of the accident, a little over eight years old ; I think about eight years and four months. The law, gentlemen, in such a case, is not so unreasonable as to expect or require the same

maturity of judgment, or the same degree of care or circumspection, in a child of tender years as in an adult. As I have already said to you, children will do things in following out their natural childish instincts which persons of older years will not do; and consequently, of course, there must be greater care used where children are expected to go, and do go, than in a place where only adults or persons of mature years would go.

Now, first, was this child old enough to understand the nature and consequences of the act which he did? If he was, if he knew about the surroundings, knew of the nature of the material with which he was about to deal, and knew it would explode when subjected to the blow of the stone with which he struck it, then, of course, he would be guilty of contributory negligence.

If you should find, then, that this plaintiff was notified to keep away from the place where these 'exploders' were kept, if he was warned of the danger, and if he was old enough to understand such warning or notice,—to know and comprehend it—and still after such warning or notice he went and took out this 'exploder' from the box, and struck it in the manner in which he did, and was injured, he then could not recover, because he would be guilty of contributory negligence; and that, gentlemen, is one of the important questions in the case for you to decide from the testimony in the case, from the age of this boy, his appearance upon the stand, and all the evidence there is, whether at this time he was old enough to comprehend, know and understand the nature of the material with which he was dealing, and whether he had been notified or warned to keep away, and had been notified or warned of the danger. If he was, then that would be the end of the case. If he was not old enough to understand, even if he did know it, if he had not arrived at sufficient maturity and intelligence to understand and know, then another question comes up; and that is, the duty of the parent.

This is not a case, gentlemen, where the parent sends his boy to school, as he has a right to do, trusts him in the street to go to school, or to go upon errands. It is a case where the boy had come out on the land with him, to bring his dinner and assist him. Now, if this boy was of such tender years that he did not know and comprehend the danger, and could not understand it, it is the law that the parent stands in the place of the child. It is not the law, gentlemen, that the father can take his child, who has not arrived at maturity so as to understand these things, and that he can allow his

child to go at large, and not. warn him of any danger, or take any steps to protect him against the danger with which he is surrounded.

If, therefore, you determine first that the child was not of such age and intelligence as to understand this, and you find from the evidence that the father knew that these explosives and these ' exploders ' were kept there, that he knew of their dangerous character, and still he took no steps or employed no means to keep his child away from there, he would be guilty of negligence on his part; and for the purposes of this· case, negligence on the part of the father would be the same as it would be on the part of the child. But if the father did not know anything about this, if the father was not warned or notified, and did not understand it, or know anything about it, then, of course, he is not guilty of negligence. The burden of proof is upon the plaintiff. He must prove not only that there is no contributory negligence upon his part, but he must also prove the negligence on the part of the defendant.

Now, gentlemen, as to the question of damages. That is a matter that appeals to your sound discretion and judgment, bearing in mind, of course, that you must not be governed by any prejudice. It is a question of pecuniary damages,— or actual damages. You have a right to take in account the suffering and pain caused by the injury inflicted by the wound; you have a right to take into account the fact to what extent he has been prevented from following the ordinary avocations of life of men who stand in the position in which he does. You have a right to take into account to what extent it has injured him, and will injure him in his daily pursuits. You have a right, also, to take into account the deformity occasioned by the wound, and the humiliation that would naturally follow by reason of such injury. Take all these things into account, and if you reach that point, give such a verdict as to damages as your own good reason and judgment warrant."

To the following questions put to the jury at the request of the defendant, they returned answers as indicated:

*First.* (1) Did John Power, the father of the plaintiff, upon the fourth of July, 1883, at the time of the accident in question in this case, and previous thereto, know that powder and explosives were used upon the farm of the defendant for the purpose of blasting out stumps; and (2) that they were

kept in the box in question in this case, under the shed that has been described by the witnesses; and (3) that it would be unsafe to handle them carelessly?

To the first clause of this question the jury answered, Yes; to the second and third, No.

*Second.* Did John Power, the father of the plaintiff, at the time of the accident in question, and for half an hour previous thereto, permit the plaintiff, his infant son, while he was hoeing potatoes, to wander about the farm, without giving him attention? And did his said boy during said time go where the powder and caps were kept, under the shed, and take one of the caps or "exploders" out of the box and place it upon a stone with one hand, and strike it with a stone in the other, and in that way get injured?

To the first clause of this question the jury answered, No; and to the second, Yes.

*Third.* Was the plaintiff old enough to realize the danger of exploding the caps in question, by pounding one on a stone, while holding it in his fingers, as he has stated?

To this the answer was: "We find the boy old enough to realize the danger of exploding the caps in question; but we find that he was uninstructed, and totally ignorant as to the power and danger of the 'exploder,' and the consequences resulting from so striking."

*Fourth.* Was the plaintiff old enough to know he had no right to take the caps in question out of the box; that he had no right to take that which did not belong to him?

This the judge refused to submit.

*Fifth.* (1) Had the plaintiff been notified, previous to the accident, not to go near the explosives, and that he was in danger of being hurt if he did; (2) and was he old enough to know what it was to be hurt, though he did not comprehend the full extent of the danger, and the full character and power of the explosives?

To the first clause the jury answered, No. The second the judge refused to submit, as he did also the two following:

*Sixth.* Did the father of the plaintiff know, previous to

the accident in question in' this case, that explosives were used by the defendant upon his farm in question to take out stumps?

*Seventh.* Were the explosives in question stored in the shed on the farm in question when John Power rented his patch of potatoes in the spring of 1883, and did he then know it?

*Eighth.* At the time the injured boy took the cap from the box and carried it away, was he old enough, and did he possess sufficient intelligence, to know, that he was doing wrong in so doing?

To this eighth question the jury answered, Yes.

*Ninth.* At the time the person injured took the cap from the box, was he old enough, and was he possessed of sufficient intelligence, to know that he was liable to be injured in any degree by the explosion of the cap?

To this the jury answered : " We find the boy old enough, and of sufficient intelligence ; but he had no knowledge that he was liable to be injured in any degree."

The following questions were also submitted at the request of the plaintiff :

*First.* Did the little boy understand the danger to which he exposed himself when he held the exploder with his left hand and struck it with his right hand?

*Second.* Was the plaintiff's father guilty of negligence in taking care of his boy at the time he was injured?"

Both of these were answered in the negative.

The charge of the judge appears to us full and fair. The jury, before they could return a verdict for the plaintiff, were required to find not only negligence in the defendant, but an absence of negligence in the plaintiff and his father. This they must be understood to have done by their general verdict, but they also did so expressly in their answers to specific questions. It is complained that the judge declined to put certain questions ; but there could be nothing conclusive in the answers to those which were not put, and the defendant was not, therefore, entitled, of right, to have them put. *Harbaugh v. Cicotte* 33 Mich. 241 ; *Foster v. Gaffield* 34. Mich. 356 ; *Cole v. Boyd* 47 Mich. 98. Had the rejected

questions all been put and answered as the defendant desired, the answers could not have overruled a general verdict against him.

The defendant also submitted several requests for instructions which the judge refused. We have examined them, and are satisfied that the judge embraced in his general charge all that the defendant was entitled to ask. It is also complained that the judge read to the jury a passage from the opinion of this Court when the case was here before, saying to them at the same time that that was the law of the case. This, it is said, was unfair and misleading, as the case was here before on a one-sided presentation of facts, and what was said by the Court was upon the record as it then stood in view of facts as then presented. But the quotation lays down only a rule of law, as applicable to this record as to the other; and one which the judge should have laid down, in his own language, if not in ours. The jury could not possibly have understood from it that they were required to find the facts in any particular way.

The instruction as to damages is complained of, but we think without sufficient reason. It was proper for the jury to take into account how the plaintiff might be restricted in his choice of occupation by the injury, and limited in his ability to work; and though the word "humiliation" was not a fortunate one to make use of, there can be no supposition that its use was misleading. There must be more or less of permanent annoyance from the mutilation of a limb, irrespective of the diminished usefulness, and the jury had a right to take this into account. This was all the judge meant.

The ingenious criticism of the judge's charge by counsel has not satisfied us that any part of it is in law erroneous, and we are constrained to

Affirm the judgment.

The other Justices concurred.