## POWER v. CITY OF AUGUSTA.

### (Circuit Court, E. D. Kentucky. April 3, 1911.)

1. COURTS (§ 372*)—FEDERAL COURTS—AUTHORITY OF STATE DECISIONS.

    The question of the measure of damages recoverable for a personal injury is one of general jurisprudence, upon which a federal court is not bound to follow the state decisions.

    [Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 977–979; Dec. Dig. § 372.*

    Conclusiveness of judgment between federal and state courts, see notes to Kansas City, Ft. S. & M. R. Co. v. Morgan, 21 C. C. A. 478; Union & Planter's Bank v. City of Memphis, 49 C. C. A. 468.]

2. DAMAGES (§§ 32, 50, 216*)—PERSONAL INJURY—DISFIGUREMENT OF PERSON.

    In an action for a personal injury not resulting in death, but causing a permanent injury to the body affecting the power to earn money, damages should not be limited to the impairment of the power to earn money, but should include impairment of ability to move about as one would like and disfigurement, and it is better to direct the jury generally to allow such sum as they believe would be a reasonable compensation for such injury without itemizing the particulars in which plaintiff is thereby affected.

    [Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 40, 41, 71, 100, 548–555; Dec. Dig. §§ 32, 50, 216.*]

3. DAMAGES (§ 132*)—PERSONAL INJURY—EXCESSIVE DAMAGES.

    An award by a jury of $2,500 damages for a personal injury to a woman by which a kneecap was broken, which permanently impaired the use of the limb, such verdict also including the expense of cure amounting to nearly $400, *held* not excessive.

    [Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 372–385; Dec. Dig. § 132.*]

At Law. Action by Mary C. Power against the City of Augusta. On motion for new trial. Overruled.

Horstman & Horstman, H. J. Power, and M. J. Hennessey, for plaintiff.

M. Hargett, for defendant.

COCHRAN, District Judge. This cause is before me on motion for new trial. Three grounds are relied on:

(1) Error in not sustaining motion to instruct the jury peremptorily to find for the defendant. I still think, as I held at the trial, that this was a case for the jury. I do not have a transcript of the evidence before me, and hence cannot undertake to demonstrate this as I might attempt to do did I so have it. I considered the matter carefully at the trial when all the evidence was fresh in my mind, and, as I recall it now, I would not have been warranted in not submitting the case to the jury.

(2) Error in the instruction as to the measure of damages. The injury suffered by the plaintiff was a broken kneecap and consequent permanent disability. I told the jury that they should allow the plaintiff, if they found for her, such reasonable sum as would compensate her for three distinct harms which she had suffered, to wit, (1) pain

and suffering; (2) expense of cure; (3) defective limb. The latter item was the permanent injury which she sustained. It is this item of which complaint is made. It is claimed on behalf of defendant that it is the law of this state as laid down by the Court of Appeals that, in case of a permanent injury, the recovery so far as it is concerned should be limited to the reduction of the power to earn money thereby occasioned, and that I erred in not so limiting the recovery because of the defective limb in this case. I think that the defendant's counsel has made good his contention as to the holding of the Court of Appeals in this particular. He cites L. C. & L. R. R. Co. v. Case's Adm'r, 9 Bush (Ky.) 728; L. & N. R. R. Co. v. Ward's Adm'r, 44 S. W. 1112, 19 Ky. Law Rep. 1900; L. & N. R. R. Co. v. Mason, 72 S. W. 27, 24 Ky. Law Rep. 1623; L. & N. R. R. Co. v. Logsdon, 114 Ky. 746, 71 S. W. 905; L. & N. R. R. Co. v. Cleaver (Ky.) 89 S. W. 494; Louisville Gas Co. v. Fuller, 122 Ky. 614, 92 S. W. 566; Lexington Ry. Co. v. Herring (Ky.) 96 S. W. 558; Id. (Ky.) 97 S. W. 1127; S. C. & C. R. R. Co. v. Core (Ky.) 96 S. W. 562; Lexington Ry. Co. v. Britton, 130 Ky. 676, 114 S. W. 295; L. & N. R. R. Co. v. Crow (Ky.) 118 S. W. 365; Belleview v. England (Ky.) 118 S. W. 994. The rule laid down in these decisions as to the measure of damages in personal injury cases where death does not ensue is that the recovery should be confined "to expense of the cure, the value of the time lost, a fair compensation for the physical and mental suffering caused by the injury, and for any permanent reduction of the power of earning money." The Case and Ward Cases were death cases, and hence did not involve the measure of damages in a case where death did not ensue. In the Case Case, however, there was a dictum as to the measure of damages in such a case. This dictum was based on Sherman & Redfield on Negligence as an authority. It stated the measure as it has been so held to be, and is the source of this position of the Court of Appeals. The Court of Appeals seemingly has followed this dictum ever since. In each one of these cases there was a reversal of the judgment of the lower court because the measure was not given as above stated.

In the Mason Case the measure had been stated to be compensation for suffering, physical and mental, loss of time, and "all such further injury, if any, temporary or permanent, which they may believe from all the evidence has accrued or is reasonably certain to accrue as the direct result of the injury." In the Logsdon Case it had been stated to be compensation for time lost, pain and suffering endured or to be endured, expense of treatment, and "the disability to labor, move about and enjoy life," suffered or to be suffered directly resulting from the injury. In the Cleaver Case the jury had been told that in estimating the damages they "should take into consideration the physical pain and mental anguish suffered by plaintiff, if any, by reason of his injuries, his loss of time, if any, from his business, and the impairment, if any, of his power to earn money," and had not been limited thereto. In the Fuller Case the measure had been stated to be compensation for the "injuries * * * sustained," "including" pain and suffering, mental and physical, and

"permanent injury if any which diminished her capacity for labor and the enjoyment of life." In the Herring Case the measure had been stated to be such sum as would "fairly compensate the plaintiff for any injury done her by reason of her fall," and the jury were told that in estimating this compensation they should allow "for any pain suffered by her, mental and physical," and "for the loss of her foot." It was held that the jury should have been confined to compensation for "the value of time lost, reasonable expenses incurred and for physical and mental suffering caused by the injury and for any reduction of her power to earn money." In the Case Case the jury were told that, in estimating the damages, they might take into consideration physical pain and mental anguish, "disability whether partial or permanent to use her right arm," expense incurred, and nervous and physical shock. It was held that they should have been told to allow the plaintiff a reasonable compensation "for physical pain and mental sufferings endured by her, or which it is reasonably certain she will endure, for loss of time, if any, the reasonable expense, if any, incurred in effecting her cure, and for the permanent impairment, if any, of her ability to earn money." In the Britton Case the jury had been told to allow plaintiff such sum as would fairly compensate her "for any injury done to her by reason of being thrown against the seat of the defendant's car," and that they might include expense reasonably incurred and physical pain and mental anguish. In the Crow Case the terms of the instruction as to measure of damages are not given, but it was held to be erroneous, in that it was not confined to "the expense of cure, value of time lost, a fair compensation for physical and mental suffering caused by the injury, and for any permanent reduction of the power to earn money." In the England Case the jury were told that, in addition to suffering, mental and physical, loss of time, expenses incurred, and impairment of capacity to earn money, they might compensate plaintiff "for any diminution of his power to pursue the course of life he might otherwise have done."

One thing that strikes me in regard to these cases is how slow lawyers representing plaintiffs in personal injury cases have been in tumbling to this position of the Court of Appeals. Otherwise it would seem that they would have seen to it that no such errors were committed. Here are nine recent cases where the judgment of the lower court was reversed because of error in the instructions as to the measure of damages in relation to the recovery for the permanent injury. It is somewhat strange, too, that the trial courts should so frequently err in this particular. I think I can see in this an indication that one does not naturally take to this position. It found its origin, as we have seen, in a death case. In such cases it is well settled that the recovery is limited to the commercial value of the life of the decedent to his estate. There is no reason to doubt the soundness of this position, and in determining this value the sole thing to be taken into consideration on the estate's side of the account are the earning capacity of the decedent and his or her probable duration of life. But that such is the rule in a death case has no legitimate bearing on what should be the rule in a case where death does not ensue, but involves a permanent

disability or harm. In such a case the recovery is to compensate for a harm done to the party injured, whereas in a death case it is to compensate for a harm done to others. It is dangerous, therefore, in determining what should be the rule in a case where death does not ensue, at least, to follow blindly expressions in a death case. I do not find the matter considered on its merits except in one of the cases, and that was in the Herring Case, in response to a petition for rehearing, 97 S. W. 1127. There the jury had been told to allow compensation to the plaintiff for the loss of her foot just as in this case I told the jury they should allow compensation to plaintiff for her defective limb. In his response Judge Hobson said:

"Different people might have very different ideas as to the amount of money that would compensate a woman for the loss of her foot. Such an instruction would be, in effect, to give the jury no criterion of damages, and is equivalent to an instruction to them to find for the plaintiff such a sum as they deemed right considering the injury she had received."

But the same reasoning is against any allowance of compensation for suffering, physical and mental, due to the injury itself. Different people may have different ideas as to this. No criterion for determining how much shall be allowed on this account is given. And the jury as to it are in effect told to allow such sum as they deem right—considering the injury received. Such a position as that of the Court of Appeals shuts out all recovery for a permanent harm that in no way affects the capacity to earn money.

These considerations have led me to doubt the soundness of this position of the Court of Appeals, and, as this is a matter of general jurisprudence and I am not bound to follow that court if it does not conform to my views, I have been led to look into the decisions of other appellate courts. The result of my investigation has been that I find that there is no court taking such a limited view as does the Court of Appeals. I find, also, that the Supreme Court, whose decisions I am bound to follow, has taken a broader view, and that under those decisions I did not err in the particular complained of.

A permanent bodily injury may involve impairment of ability to earn money, impairment of ability to act as one would like, and mental pain in contemplation of it. It may involve all of these things, or some one or more of them or none of them. Where it involves neither, at least, an alteration in one's person from what it theretofore was has taken place. In such a case, at least where the alteration amounts to disfigurement, it is hard to see why it should not be a matter for the jury to determine whether some compensation should not be allowed for it alone, and, if any, how much. It is no more difficult to determine this than to determine how much should be allowed for pain and suffering.

In the case of Western, etc., Ry. Co. v. Young, 81 Ga. 397, 7 S. E. 912, 12 Am. St. Rep. 320, it was held that a plaintiff might recover for a "deformity or impairment of his physical symmetry." In the case of Birmingham v. Lewis, 92 Ala. 352, 9 South. 343, it was held that a woman who had broken her leg by stepping into a hole in a street, and had thereby been caused to limp permanently, was entitled to recover for the mere disfigurement. Judge Walker said:

"The authorities recognize bodily pain and disfigurement as items for which compensation is to be made in the assessment of damages for personal injuries."

In the case of Giffen v. Lewiston, 6 Idaho, 231, 55 Pac. 545, of a similar character to the foregoing, Judge Quarles said:

"The trial court did not err in instructing the jury that disfigurement of the plaintiff caused by the injury complained of is an element of damage to be considered by them. Such disfigurement is an element of damage; but annoyance to the plaintiff caused by contemplation of disfigurement is too remote to be considered as an element of damage resulting from personal injury."

Watson on Damages for Personal Injuries, § 472, states the holding of these two last-mentioned cases in these words:

"It has been decided, also, that physical disfigurement apart from mental suffering, caused by a consciousness and contemplation thereof, is an element of damages."

And in 13 Cyc. p. 145, the law is thus stated:

"In estimating damages in cases of personal injury, where a disfigurement or deformity of the person has occurred, the jury may take such fact into consideration."

The only particular in which I find the courts differ here is as to whether it is proper to submit to the jury the matter of mental pain in contemplation of the permanent bodily injury. In the Idaho case, we have seen, it was held that it should not be submitted because too remote. But seemingly the large majority of the courts hold that it should. In Watson on Damages for Personal Injuries, § 428, it is said:

"According to the doctrine of a large number of cases, there may be a recovery, in actions for personal injuries, for such mental anguish as results from a consciousness and contemplation of one's disfigurement of person, and, where such an injury is shown, mental suffering on account of disfigurement may be presumed, though there is no distinct allegation or proof thereof."

The author cites the decisions of eleven different state courts in support of this position. In the case of Nichols v. Brabazon, 94 Wis. 549, 69 N. W. 342, it was said that it had often been held to be proper to consider in such cases "mental suffering on account of disfigurement of the person or impairment of the use and symmetry of the limbs." In the case of Atlantic, etc., Ry. Co. v. Wood, 48 Ga. 565, it was held proper for the jury to consider "the mortification which it put upon him (plaintiff who had been permanently injured) from having to pass through life deformed, lame, shorn of his full proportions of a man." The exact language in which this element has been submitted has sometimes been criticised, whilst the submission of the element itself has been upheld. In the case of Power v. Harlow, 57 Mich. 107, 23 N. W. 606, the jury had been charged that they might "take into account the deformity occasioned by the wound and the humiliation that would naturally follow by reason of such injury." Judge Cooley, in referring to this charge, said:

"Though the word 'humiliation' was not a fortunate one to make use of, there can be no supposition that its use was misleading. There must be more

or less permanent annoyance from the mutilation of a limb, irrespective of the diminished usefulness, and the jury had a right to take this into account."

3 Sutherland on Damages, p. 259, states that the measure of damages in personal injury cases is "compensation according to the nature of the injury when the proper action is brought. Such injury may consist of personal inconvenience, sickness, loss of time, bodily and mental suffering, loss of capacity to earn money, pecuniary expenses, disfigurement, or permanent physical or mental impairment."

And on page 713 he asks:

"When a healthy person is thus made permanently an invalid, deprived largely of his capacity to enjoy life, suddenly transformed from a mental state of cheerfulness and hope to another of melancholy by day and unrest and bad dreams by night, is he not entitled to some compensation for this physical and psychical alteration in himself?"

The leading case to the contrary is that of So. Pacific Co. v. Helzer, 135 Fed. 272, 68 C. C. A. 26, 1 L. R. A. (N. S.) 288, a decision of the Eighth Circuit Court of Appeals, opinion by Judge Sanborn. He thus states the reasoning against the position:

"But mortification or distress of mind from the contemplation of the crippled condition and of its effect upon the esteem of his fellows, that mental pain which is separable from the physical suffering caused by the injury, is too remote, indefinite, and intangible to constitute an element of the damages in such a case and evidence of it is inadmissible. * * * Mental pain of this character, the suffering from injured feelings, is intangible, incapable of test or trial. The evidence of it, like that which converted the alleged witches, rests entirely in the belief of the sufferer, and it is not susceptible of contradiction or rebuttal. Many other causes, the education, temperament, and sentiment of the sufferer, the mental attitude, the acts and words of his friends and acquaintances, concur with the accident to cause this mental distress in such a way that it is impossible to separate and ascribe the proper part of it to the injury caused by the defendant. And the amount of mental pain caused by any disfigurement necessarily varies so with the character, temperament, and circumstances of the injured person that no just measure of damages from it can be found. Such mental suffering is too remote, intangible, and unmeasureable to form the basis of any just adjudication."

In so holding that court followed the earlier decision by it in the case of Chicago, R. I. & P. Ry. Co. v. Caulfield, 63 Fed. 396, 11 C. C. A. 552, opinion by Judge Thayer, which decision was itself based on the decision of the Supreme Court of Vermont in the case of Bovee v. Danville, 53 Vt. 190, as to which some question may be made as to whether it covered the question there involved. The injury complained of in the Vermont case was not a permanent injury to the body. It was a miscarriage resulting from an injury negligently inflicted upon a woman. It was held that, though recovery could be had from mental suffering attending the miscarriage, none could be had for injured feelings following it. Judge Powers said:

"If the plaintiff lamented the loss of her offspring, such grief involves too much an element of sentiment to be left to the conjecture and caprice of a jury. If, like Rachel, she wept for her children and would not be comforted, a question of continuing damages is presented too delicate to be weighed by any scales which the law has yet invented."

A decision to the contrary of this is that of Smith v. Overby, 30 Ga. 241. Other decisions cited by Judge Sanborn in support of his position lend questionable support to it. In the case of Kennon v. Gilmer, 131 U. S. 22, 9 Sup. Ct. 696, 33 L. Ed. 110, the personal injury complained of was the loss of a leg, and the jury had been told in fixing the amount of recovery to take into consideration plaintiff's bodily and mental pain and suffering both taken together, but not his mental pain alone. This construction was complained of, and it was held to be sound. Mr. Justice Gray said:

"The defendants objected to this instruction that the jury were permitted to assess damages for mental suffering. But the instruction given only authorized them in assessing damages for the injury caused by the defendants to the plaintiff to take into consideration his bodily and mental pain and suffering, both taken together (but not his mental pain alone), and such as inevitably and necessarily resulted from the original injury. The action is for an injury to an intelligent being, and, when the injury whether caused by willfulness or negligence produces mental as well as bodily anguish and suffering independent of any extraneous consideration or cause, it is impossible to exclude the mental suffering in estimating the extent of the personal injury for which compensation is to be awarded."

Now a holding that mental suffering accompanying physical suffering may be considered is hardly a holding that mental suffering after physical suffering has ceased in contemplation of the permanent bodily injury may not be considered in estimating the damages, though the way in which this holding is expressed and supported may be thought to lean towards such additional holding. But the decision of the Supreme Court to be hereafter referred to is more in support of the position that allowance may be made for such mental suffering than this decision is against it. The case of Dorrah v. Railway Co., 65 Miss. 14, 3 South. 36, 7 Am. St. Rep. 629, also cited by Judge Sanborn, does not support his position. In that case there was no bodily injury at all. The question was whether mental suffering was an element of damage where a passenger had been carried beyond his station, and it was held that it was not. In the case of Johnson v. Wells Fargo Co., 6 Nev. 224, 3 Am. Rep. 245, also cited by Judge Sanborn, it does not appear that there was a permanent bodily injury, and that the pain of mind involved was such as accompanied such injury and was in contemplation of it. The right to recover damages for any suffering, bodily or mental, was said to be contrary to reason. I have not the other cases cited by Judge Sanborn in support of his position, and hence cannot say whether they do in fact support it or not. I would not, however, be understood as questioning the soundness of Judge Sanborn's position. Indeed, it is hard to resist the persuasiveness of his reasoning.

It is now in order to consider the relevant Supreme Court decisions, which include that of Kennon v. Gilmer, already in part considered. In the case of Illinois Central R. R. Co. v. Barron, 5 Wall. 90, 18 L. Ed. 591, there is this dictum of Mr. Justice Nelson as to the measure of damages in a personal injury case where death has not ensued:

"There can be no fixed measure of compensation for the pain and anguish of body and mind, nor for the loss of time and care in business, or the permanent injury to health and body."

Thereby permanent injury to health and body was recognized as an element for which the plaintiff is entitled to compensation, and it was stated that there could be no "fixed measure" for determining how much compensation should be allowed on account of it. This cuts out limiting the compensation to the effect of the permanent injury on the power to earn money, and leaves it to the jury to say how much should be allowed on this account.

In considering the case of Kennon v. Gilmer, above, I took in only one feature. The jury, in addition to being authorized to take into consideration plaintiff's bodily and mental pain and suffering, had been charged to consider also "the inconvenience of being deprived of his leg and loss of time and inconvenience in attending to his business generally." Here impairment of ability to act as he would li' e—i. e., the inconvenience growing out of the loss of his leg was expressly submitted to the jury. No criticism of the instruction on this ground was made, and there is not the slightest indication that the Supreme Court thought that the instruction in this particular was unsound. The other decision of the Supreme Court relevant in this connection, and to which reference has been heretofore made, is that of Denver & Rio Grande Ry. Co. v. Harris, 122 U. S. 597, 7 Sup. Ct. 1286, 30 L. Ed. 1146. That was a suit to recover damages for an assault and battery, consisting in plaintiff's being fired upon and seriously wounded. The point of the decision relied on is to be gathered from this portion of Mr. Justice Harlan's opinion, to wit:

"One of the consequences of the wound received by the plaintiff at the hands of defendant's servants was the loss of the power to have offspring—a loss resulting directly and proximately from the nature of the wound. Evidence of this fact was admissible, although the declaration does not, in terms, specify such loss as one of the results of the wound. The court very properly instructed the jury that such impotency if caused by the defendant's wrong might be considered in estimating any compensatory damages to which the plaintiff might be found, under all the evidence, to be entitled."

Here, then, was a permanent bodily injury which did not affect the power to earn money, but which did involve inability to perform the natural function of procreation and mental pain in contemplation thereof, and it was held that compensation should be made for it, and that was for the jury to say how much should be so allowed. It seems to me that this decision is a direct authority in support of the instruction complained of herein. In this connection it is to be noted that the Court of Appeals of Kentucky has held, in a case which I cannot now place my hands on, to the same effect as held in this decision of the Supreme Court, which is hardly consistent with its position that the recovery for a permanent bodily injury should be limited to the impairment of the power to earn money. I have not been able to lay my hands on any other relevant federal decisions than those which I have already considered, except the case of The Oriflamm, Fed. Cas. No. 10,572, to which I will now allude. There an allowance of $500 was made for a scar on the forehead of a German girl, a steerage passenger, in the vessel which was libeled, who was injured by tin boxes falling on her. Judge Deady, in discussing the matter, said:

"It may be that the sum of $500 is an insufficient compensation for such a blemish upon the personal appearance of the libelant. But it does not appear that the scar will affect her personal appearance so as to make her presence offensive or painful to others. For this reason it is not likely to interfere with or prevent her from obtaining employment in her calling and sphere of life. It will in no way affect her ability to labor and earn her living. In manner and appearance she is a plain girl moving in an humble walk of life, and not like many others dependent upon her beauty for her dowry or support. Still the scar will be a permanent disfigurement of her person, for which she is entitled to some compensation. Karr v. Parks, 44 Cal. 49. In this country, at least, it is still open to every woman, however poor or humble, to obtain a secure and independent position in the community by marriage. In that matter, which is said to be the chief end of her existence, personal appearance, comeliness, is a consideration of comparative importance in the case of every daughter of Eve."

In Kentucky under the rule laid down by the Court of Appeals no recovery could have been had for that scar, because, as was expressly held by Judge Deady, it in no way affected the libelant's ability to labor and earn her living. This illustration, it seems to me, is sufficient without more to convince one of the unsoundness of this Kentucky rule. As I am not bound by it, I must decline to follow it, and hence hold that I did not err in the particular complained of.

Possibly in a case where the plaintiff was a wage-earner or otherwise a money maker, and the permanent injury affects his or her capacity to earn or make money, substantial justice will be done if the measure of recovery is limited to the items of pain and suffering, loss of time, expense of cure, and impairment of power to earn money. This gives sufficient room for a jury to allow what should be deemed ample compensation for the injury sustained. To include more may have a tendency to generate feeling in the jury, such as to be in the way of a proper handling of the case by it. But, where the plaintiff is not a wage-earner or otherwise a money maker, as is the case here, or where, though he or she may be such, the permanent injury does not affect his or her capacity to earn or make money, there is little or no room to include impairment of power to earn money as an element of damage, and substantial justice will not be done in limiting the measure of recovery as above. In such a case at least, the jury should be allowed to take into consideration the effect of the permanent injury otherwise than on the power to earn or make money. And it seems to me that, where the effect of the permanent injury is not limited to such power, it should be left to the jury generally as I did in this case, instead of itemizing all the possible effects. To do so would be excessive itemization. The withholding of its harrowing effect is more to be desired than giving the jury a more definite guide. Particularly should such harrowing language as that condemned by Judge Cooley or that indulged in by Sutherland be avoided. Coming from the court, it is possible for it to be quite baneful. I might have passed this ground by with the suggestion that no exception was taken to this portion of the charge. But in view of the next and last ground relied on I have preferred to dispose of it on its merits.

[3] Third. Excessive damages: The amount allowed was $2,500. The expense of cure amounted to something under $400; so that at

least $2,100 was for pain and suffering and for the defective limb. The nature of the injury was such that the pain and suffering for a time at least must have been intense. By reason of the defective condition of the limb, it must be held that its use is seriously impaired. As heretofore stated, the injury sustained was a fractured kneecap of the right leg. The subsequent union of the two parts was not a bone union, but what is termed a "fibrous union." Proper care requires the use of a rubber supporter the rest of her life. She was still lame at the time of the trial—a year and a half after the injury. She will always have a weak spot there, and there will be a tendency to give way at any time. The claim of excessiveness is based somewhat on the position that there was error in the instruction as to the measure of damages, in that elements were submitted to the jury for consideration which were not proper. We have seen that this position is not well taken. Counsel for defendant has cited thirteen personal injury cases that went to the Court of Appeals in which the verdicts ran from $500, four of them being for that amount, to $2,500, in none of which the amount of the verdicts was held to be excessive, and claims that a consideration of these cases for the purpose of ascertaining what amounts juries usually allow in personal injury cases will show that the amount allowed here was excessive. I do not think such a conclusion follows therefrom. In one of them—C. & O. Ry. Co. v. Friel, 39 S. W. 704, 19 Ky. Law Rep. 152—the amount of the verdict was $1,650. The nature of the injury was nothing more than a sprained ankle. Two of them were sidewalk cases and the persons injured were women. The amount of the verdict in one, that of Richmond v. Martin (Ky.) 78 S. W. 219, was $1,500, and the nature of the injury was that one of the plaintiff's legs and sides was greatly wrenched. The court thought the verdict was at the top notch. In the other, that of Frankfort v. Chinn (Ky.) 89 S. W. 188, the amount of the verdict was $2,500 and the nature of the injury a twisted ankle and wrenched knee. In neither one of these cases was any bone broken. There was considerable magnification, it is true, of the results following from the wrenching and twisting of the limbs affected in purely subjective matters, such as nervous shocks, which was absent from this case, but in the very nature of things it is quite impossible that the injury sustained in either case was as serious as that sustained here. There is no indication from the opinions in those cases that the amounts allowed included anything on account of expense of cure, whereas here the expense was nearly $400.

Three matters are specially relied on as having a tendency to prejudice the jury against defendant. One was that the plaintiff was good looking. Another was that certain ex-officials of the defendant, under whose administration the defective condition of the sidewalk arose and was permitted to remain until the present officials succeeded them, testified strongly against defendant as to the nature and extent of that defective condition. And the third one was that plaintiff's attorney was a cripple, and in his argument to the jury made some allusion to his knowledge of the effect of being a cripple. The allusion should not have been made, but no objection was made to it. As to the testi-

mony of the ex-officials, I cannot see that this matter would prejudice the jury against defendant. It might prejudice them against the ex-officials. And, as to plaintiff's good looks, they no doubt would be with us at another trial if one was granted. It was for fear that such consideration might affect the jury illegitimately that I cautioned them to be reasonable in the amount of the verdict in case they determined that defendant was liable. In view of the nature of the injury, the pain and suffering attending it, and the permanent disability arising from it and the heavy expense of cure, I am unable to say that the verdict was the result of any passion or prejudice, or even that it was more than it should have been. On the contrary, I think that for me to tamper with it would be to invade the province of the jury.

The motion is overruled.